[Cite as *Wells Fargo Bank, N.A. v. Myers*, 2015-Ohio-4212.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

| | |
|---|---|
| Wells Fargo Bank, N.A. | Court of Appeals No. F-14-011 |
| Appellee | Trial Court No. 12CV000324 |
| v. | |
| Jill T. Myers, et al. | **DECISION AND JUDGMENT** |
| Appellants | Decided: October 9, 2015 |

* * * * *

Scott A. King and Terry W. Posey, Jr., for appellee.

George C. Rogers, for appellants.

* * * * *

**JENSEN, J.**

{¶ 1} Defendants-appellants, Jill T. Myers and Darwin Myers, appeal the October 6, 2014 judgment of the Fulton County Court of Common Pleas denying their motion to vacate the January 10, 2013 judgment entry of default in favor of plaintiff-appellee, Wells Fargo Bank, N.A. For the reasons that follow, we affirm the trial court's judgment.

## I. Background

{¶ 2} On May 27, 2003, the Myers executed a note and an accompanying mortgage in connection with the purchase of their home. Wells Fargo is the current holder of the note and mortgage. On November 19, 2012, Wells Fargo filed a complaint in foreclosure after the Myers defaulted on their payment obligations. The Myers were served with the complaint on November 20, 2012.

{¶ 3} The Myers failed to file an answer, and on January 7, 2013, the bank moved for default judgment. The trial court granted the bank's motion in a judgment entry and decree of foreclosure journalized on January 10, 2013. The property was sold at sheriff's sale on July 11, 2013, and on August 22, 2013, the trial court journalized a confirmation entry of sale and distribution of proceeds.

{¶ 4} The bank filed an alias praecipe for writ of possession on February 26, 2014. On March 5, 2014, citing Civ.R. 60(B)(2) and (3) and 59(B), the Myers filed a motion to stay writ of possession and motion to vacate sale pending determination of a federal action. In that motion, the Myers claimed that they had filed an action in the United States District Court for the Northern District of Ohio alleging violations of the federal Truth-in-Lending and Real Estate Settlement Procedures Acts, in addition to civil RICO violations. They accused the bank of fraudulent mortgage assignments and claimed that it had no valid interest in the note and, therefore, no standing to institute foreclosure proceedings.

2.

**{¶ 5}** The bank filed a memorandum opposing the Myers' motion on March 7, 2014. It asserted that the Myers had not, in fact, filed a federal action and it challenged their motion as untimely. The bank claimed that the Myers lacked standing to challenge the assignment of the mortgage, that it was the real party in interest to prosecute the foreclosure action, that any alleged federal claims were compulsory counterclaims that were required to be brought in the foreclosure action, that there existed no new evidence to support a Civ.R. 60(B)(2) motion, and that there existed no evidence of fraud as required to support a Civ.R. 60(B)(3) motion.

**{¶ 6}** On March 7, 2014, the trial court denied the Myers' motion as untimely, and agreed that there was no evidence that a federal action had been filed, thus the motion for stay was unwarranted. It directed the sheriff to proceed with the writ of execution.

**{¶ 7}** On August 1, 2014, counsel entered an appearance on the Myers' behalf for the first time. Counsel filed a motion to vacate the judgment and decree of foreclosure and sheriff's sale, and for leave to file an answer. In their motion, they claimed that in August or September of 2012, they encountered difficulty in paying their mortgage and were contacted by Wells Fargo about applying for a loan modification. They completed the application and provided all documents requested by the bank. They repeatedly told the bank's representative, Josephine Arku, that they intended to stay in the home. By November of 2012, the Myers' calls to Arku went to voice mail and were never returned. On November 19, 2012, the bank filed its foreclosure complaint.

3.

**{¶ 8}** According to the Myers' motion, Mrs. Myers contacted the bank's attorney, Melissa Hamble, upon being served on November 20, 2012. Mrs. Myers informed Hamble that they had applied for a loan modification and were awaiting approval. Mrs. Myers asked Hamble what she should do and Hamble responded that she could not provide legal advice. Hamble asked Mrs. Myers if they intended to stay in the home, and she responded affirmatively. Despite this conversation, on January 8, 2013, the bank filed its motion for default judgment, never indicating that it had been contacted by Mrs. Myers or that it had been advised of the Myers' efforts to avoid foreclosure. The motion was granted by the court the following day without a hearing and without notice to the Myers.

**{¶ 9}** The Myers argued that the default judgment was void because notice was not provided as required by Civ.R. 55(A). They insisted that their phone call to Hamble, albeit not a formal appearance, constituted an appearance such that the bank was required to provide seven days' notice. Alternatively, they argued that the elements of Civ.R. 60(B) were met. The Myers also claimed that the certificate of service on their motion for default was not in compliance with Civ.R. 5(D) and they maintained that they had at least one good and sufficient defense to the bank's complaint because the bank failed to perform the conditions precedent to foreclose and accelerate the note.

**{¶ 10}** The bank opposed the Myers' motion. It argued that a single phone call, which Hamble did not even recall taking place, was insufficient to invoke the Civ.R. 55(A) notice requirement. It also argued that because the Myers had filed a pleading in

4.

March of 2014 to vacate the sale and challenge the foreclosure, res judicata barred their new challenge to the judgment. Finally, it again contended that the Myers' motion was untimely under Civ.R. 60(B).

{¶ 11} The Myers filed a reply brief, arguing that the failure to comply with Civ.R. 55(A) rendered the judgment void and subject to direct and collateral attack at any time and in any proceeding.

{¶ 12} On September 17, 2014, the trial court conducted a hearing on the Myers' motion and heard testimony from Mrs. Myers and from Hamble. Mrs. Myers testified that she lost her job in October of 2010 and fell behind on her mortgage in 2011. She contacted Wells Fargo about a loan modification in August of 2012 and spoke to Arku, who said she would put a loan modification package together for her. Myers completed the application and provided a number of documents. Arku requested the same documents a second time, and Mrs. Myers provided them. She received the foreclosure complaint on November 20, 2012, and, according to cell phone records she produced at the hearing, she called Hamble on November 21, 2012. The call lasted 16 minutes, most of which she spent on hold. Upon speaking with Hamble, Mrs. Myers told her that she had a loan modification in progress. Hamble responded that she could not provide legal advice because she represented the bank.

{¶ 13} Mrs. Myers contacted Wells Fargo but could not get a hold of Arku despite leaving approximately 20 messages. She spoke with other loan modification specialists who told her that she needed to speak directly to Arku. She received a letter from the

5.

bank dated February 25, 2013, thanking her for sending documentation regarding her request for mortgage assistance and instructing her to call. She received another letter two days later asking for paperwork that she had already submitted, and yet another letter dated March 8, 2013, identifying a new representative, Troy Whitted. She called Whitted and he informed her that Arku had not been with the company for several months. Whitted told Mrs. Myers that their paperwork was outdated and need to be resubmitted. Mrs. Myers complied.

{¶ 14} The Myers received a notice in April of 2013 that a judgment of foreclosure had been entered, however they also received a letter dated May 10, 2013, indicating that the bank needed additional documentation to evaluate her eligibility for mortgage assistance. Mrs. Myers testified that she believed that the foreclosure action had been mistakenly filed and that Wells Fargo would get it straightened out. She indicated that the sheriff's sale had been put on hold twice and she was told that the bank would put a hold on the property and ultimately modify the loan.

{¶ 15} On cross-examination, Mrs. Myers conceded that the complaint contained bolded language warning that she must respond, that she did not seek counsel at that time, and she never called around or asked anyone how to defend the case, despite being told by Hamble that she could not provide advice. She acknowledged that she did not tell Hamble that she intended to seek counsel, they did not discuss the complaint, and she did nothing to stop the foreclosure other than calling Wells Fargo. She continued to receive notices from the court captioned *Wells Fargo v. Myers,* but filed nothing until early 2014.

6.

When she did file with the court in early 2014, she made no mention of the phone call with Hamble. She agreed that she was never granted a permanent loan modification.

{¶ 16} The bank presented testimony from Hamble. Hamble testified that she does not recall speaking with Mrs. Myers and that her file notes contain no indication that a conversation ever occurred. She said that it was her practice to consent to a 30-day extension of time, if requested, but the Myers sought no such extension.

{¶ 17} On cross-examination, Hamble testified that her file did not indicate that there was a pending loan modification application. The first time she became aware of this was after the judgment when the bank asked her to cancel the sale because of a loss mitigation. She said that when she is informed that there is a pending loss mitigation, her practice is to put the file on hold and not proceed with the case, even without the bank's approval. She conceded that under Consumer Financial Protection Bureau ("CFPB") regulations, she is not permitted to proceed with a case upon learning that there is a completed application for loan modification.

{¶ 18} At the hearing, the Myers offered a copy of a consent order entered into between Wells Fargo and the U.S. Comptroller of Currency in April of 2011, agreeing to notify a borrower of the bank's final decision on an application for a permanent loan modification within a reasonable period before proceeding with a foreclosure sale. The trial court excluded the document because it had not been properly authenticated and was not germane to the Civ.R. 55(A) issue before it.

7.

{¶ 19} In a judgment entry journalized on October 6, 2014, the trial court denied the Myers' motion. It framed the issues before it as follows: (1) whether Mrs. Myers' contact with Hamble constituted an "appearance" sufficient to invoke the notice requirements of Civ.R. 55(A); and (2) if the Civ.R. 55(A) notice requirement was invoked and not properly provided, was the January 9, 2013 judgment void or merely voidable. It held that the single phone call did not constitute an "appearance." Based on this determination, it concluded that the issue of whether the judgment was void or merely voidable need not be reached.

{¶ 20} The Myers appealed the trial court's October 6, 2014 judgment. They assign the following error for our review:

The Trial Court Erred in overruling the Myers [sic] Motion to

Vacate the (Default) Judgment of January 9, 2013.

They identify the issues presented as follows:

1. Does a phone call to a foreclosing bank's counsel advising said counsel that the debtor's [sic] had a completed loan modification request pending with the bank constitute an appearance to invoke the notice requirement of Civ.R. 55(A) when said Bank has previously signed a consent decree with the Comptroller of Currency to not institute foreclosure proceedings when a homeowner had a loan modification request pending?

2. Does a foreclosing bank have notice of intent to oppose foreclosure as a matter of law, that is imputable to its Attorney's [sic] when

8.

said bank has previously entered into a consent decree with the Comptroller of Currency not to institute foreclosure proceedings when a homeowner has a pending loan modification request to it, and such a loan modification request has been submitted?

## II. Law and Analysis

**{¶ 21}** Civ.R. 55(A) entitles a party to apply for a judgment by default where the party against whom relief is sought has failed to plead or otherwise defend against the complaint. The rule requires that "[i]f the party against whom judgment by default is sought has appeared in the action, he * * * shall be served with written notice of the application for judgment at least seven days prior to the hearing on such application." Civ.R. 55(A). Civ.R. 55(B) permits a court to set aside a default judgment in accordance with Rule 60(B). However, "if a judgment is void, the trial court has the inherent power to vacate the judgment, and a party need not seek relief under Civ.R. 60(B)." *CitiMortgage, Inc. v. Bumphus*, 197 Ohio App.3d 68, 2011-Ohio-4858, 966 N.E.2d 278, ¶ 22 (6th Dist.), citing *Patton v. Diemer,* 35 Ohio St.3d 68, 70, 518 N.E.2d 941 (1988). The court may vacate a void judgment at any time. *CitiMortgage, Inc. v. Fishel,* 7th Dist. Mahoning No. 11MA97, 2012-Ohio-4117, ¶ 6, citing *Westmoreland v. Valley Homes Corp.,* 42 Ohio St.2d 291, 294, 328 N.E.2d 406 (1975).

**{¶ 22}** As the trial court identified, we must determine whether the Myers, in fact, "appeared," thereby requiring the bank to provide seven days' written notice prior to the hearing on its motion for default judgment. If they did appear, we must determine

9.

whether the failure to provide seven days' notice rendered the judgment void such that the judgment may be vacated without regard to the requirements of Civ.R. 60(B).

{¶ 23} The Myers claim that in light of the consent decree between the bank and the Comptroller of Currency, under which the bank agreed not to institute foreclosure proceedings when a homeowner has a pending loan modification application, Mrs. Myers' call to the bank's attorney advising her of their pending loan modification application constituted an appearance.

{¶ 24} The bank counters that when Mrs. Myers contacted its attorney, she did not express an intention to defend. It argues that the consent decree does not serve as evidence demonstrating an intention to defend because (1) the trial court excluded evidence of the consent decree and the Myers did not appeal that decision, (2) there is no case law suggesting that an agreement between a plaintiff and a governmental entity can constitute an appearance by a defendant, and (3) the Myers lack standing to invoke the consent decree in their defense. The bank also argues that res judicata barred the Myers from arguing that they had "appeared" because they failed to raise this in their motion filed on March 5, 2014. The Myers deny that res judicata applies because their initial motion was a motion to stay proceedings—not a motion to vacate. They also assert that the motion at issue was not a Civ.R. 60(B) motion, but was instead a request that the trial court exercise its inherent power to vacate a void judgment.

{¶ 25} We first address whether Mrs. Myers' single phone call to the bank's attorney constituted an "appearance." For purposes of Civ.R. 55(A), an "appearance" is

10.

an overt action clearly expressing an intention and purpose to defend against a lawsuit. *AMCA Internatl. Corp. v. Carlton*, 10 Ohio St.3d 88, 91, 461 N.E.2d 1282 (1984). In construing the notice provisions of Civ.R. 55(A), Ohio courts liberally interpret the term "appeared." *BancOhio Natl. Bank v. Mager*, 47 Ohio App.3d 97, 98, 547 N.E.2d 383 (10th Dist.1988). "[T]he determination of whether a party has appeared in an action for the purposes of Civ.R. 55(A) notice requirements does not necessarily hinge on whether a formal filing was made with the court." *Miamisburg Motel v. Huntington Natl. Bank,* 88 Ohio App.3d 117, 125-26, 623 N.E.2d 163 (2d Dist.1993). A party will be said to have appeared in the action when that party clearly expresses to the opposing party an intention to defend the suit. *Id.* No formal filing is required. *Id.*

{¶ 26} In support of their position, the Myers rely on the Ohio Supreme Court's decision in *AMCA Internatl. Corp.* There the plaintiff filed its complaint on August 13, 1982. *Id.* at 88. On September 28, 1982, a legal assistant employed by defendant's law firm called plaintiff's counsel after learning from the clerk of courts that a complaint had been filed. *Id.* at 89. Plaintiff's counsel agreed to send a copy of the complaint to the law firm so that an answer could be filed. *Id.* On September 29, 1982, the legal assistant received the complaint, and he believed from his phone conversation with plaintiff's counsel that a reasonable time would be afforded for an answer to be filed. *Id.* The firm filed the defendant's answer seven days later. *Id.* However, on October 5, 1982, plaintiff filed a motion for default judgment, granted by the trial court the next day. *Id.* at 88. Defense counsel learned that the default judgment had been entered via a letter from

plaintiff's counsel dated October 18, 1982. *Id.* at 89. Defendant moved to set aside the default judgment, but the court denied the motion. *Id.* Defendant appealed, arguing that it was entitled to notice under Civ.R. 55(A) because it had entered an appearance. *Id.* at 90. The Supreme Court held that plaintiff had been made sufficiently aware of defendant's intention to defend the lawsuit by virtue of the telephone conversation between plaintiff's counsel and the legal assistant, therefore, the defendant had "appeared" for purposes of Civ.R. 55(A). *Id.*

{¶ 27} The Myers also cite to our decision in *Chiaverini v. Little*, 6th Dist. Lucas No. L-06-1344, 2007-Ohio-3683, for the proposition that a telephone call to counsel of the foreclosing party is sufficient to constitute an appearance for purposes of Civ.R 55(A). In *Chiaverini*, we rejected the plaintiff's argument that defendant had not entered an appearance in the case, noting that the parties' attorneys had communicated with each other on three separate occasions before plaintiff filed its motion for default judgment. *Id.* at ¶ 15. *Chiaverini* is not analogous to the present case, however, because the lawsuit at issue there was a re-filed action, there was a second action pending between the parties in federal court, and the parties had negotiated a settlement agreement that may or may not have been binding. *Id.* at ¶ 3-5.

{¶ 28} Here, Mrs. Myers told counsel for the bank that she had a loan modification in progress, but she conceded that the one phone call to counsel was the only action she took. She acknowledged that Hamble told her that she could not provide advice and that she and Hamble did not discuss the complaint. Mrs. Myers did not tell Hamble that she

12.

intended to seek counsel or defend the suit. She also conceded that she saw the bolded language in the summons and complaint warning that she must respond, she did not seek counsel at that time, and she never called around or asked anyone how to defend the case.

{¶ 29} Given this background, we find the Third District's decisions in *Holthaus Elevator, Inc. v. Siegel,* 3d Dist. Shelby No. 17-03-18, 2004-Ohio-1050, and *Hyway Logistics Services, Inc. v. Ashcraft,* 3d Dist. Hancock No. 5-99-40, 2000 WL 123794 (Feb. 2, 2000), to be more factually on point than *AMCA* or *Chiaverini*.

{¶ 30} In *Siegel*, the defendant-debtors sent a letter to their creditor's counsel in response to a collection letter they received before the creditor filed a complaint. *Id.* at ¶ 5. In that letter, they acknowledged the debt but disputed the amount. *Id.* After being served with the complaint, the debtors called the creditor's counsel and asked why the lawsuit had been filed. *Id.* The Third District considered whether the pre-suit letter or the post-suit phone call constituted an appearance for purposes of Civ.R. 55(A). *Id.* at ¶ 7. It concluded that they did not. *Id.* In reaching that conclusion, it relied on its earlier decision in *Ashcraft*. *Id.* In *Ashcraft*, the court found that a phone call from the defendant to plaintiff's counsel did not constitute an appearance. *Ashcraft* at *4. It explained:

> [T]he Defendant may have made telephone contact with Plaintiff's counsel, but there was no indication during the telephone communication that Defendant * * * intended to enter a formal appearance in the lawsuit, nor in any way intended to present a defense as to the lawsuit. The

13.

telephone contact with Plaintiff's attorney was in the nature of a protest of Plaintiff's counsel's decision to go forward with the legal proceeding, as opposed to an indication that the Defendant intended to file a formal appearance or to defend the lawsuit. Further, Defendant * * * did not indicate that he would take any action to attempt to resolve the dispute. The Court therefore finds that the telephone conversation between the Defendant and Plaintiff's counsel does not rise to the level of an appearance for the purpose of Rule 55. Therefore, a seven-day written notice of hearing prior to the granting of a Default Judgment is and was not required. *Id.*

{¶ 31} Because we find the present case factually analogous to *Siegel* and *Ashcraft,* and factually distinguishable from *AMCA Internatl. Corp.*, 10 Ohio St.3d 88, 461 N.E.2d 1282, and *Chiaverini*, 6th Dist. Lucas No. L-06-1344, 2007-Ohio-3683*,* we conclude that the Myers did not "appear" for purposes of Civ.R. 55(A) by their single phone call to the bank's counsel, and were, therefore, not entitled to seven days' notice.

{¶ 32} With respect to the consent decree, we agree with the bank that it was not properly admitted as evidence and, as the bank points out, the Myers failed to assign error in its exclusion from evidence. In any event, consistent with our previous analysis, the existence of the consent decree did not relieve the Myers of their duty to respond to the lawsuit in a manner evidencing their intention to defend against it. As the Second

14.

District held in *Bank of Am., N.A. v. Thrasher*, 2d Dist. Clark No. 2013-CA-20, 2013-Ohio-3934, ¶ 13:

> "[A] defendant in a foreclosure action who has been properly served with the complaint may not sit on his rights." *Bank of New York v. Baird,* 2d Dist. Clark No.2012-CA-28, 2012-Ohio-4975, ¶ 29, citing *GMAC Mortgage, L.L. C. v. Herring,* 189 Ohio App.3d 200, 2010-Ohio-3650, 937 N.E.2d 1077, ¶ 47-50 (2d Dist.). He is "required to respond to the complaint, either by filing an answer or by challenging the allegations in the complaint by motion, such as a motion to dismiss, pursuant to Civ.R. 12(B), a motion for a more definite statement under Civ.R. 12(E), or a motion to strike, pursuant to Civ.R. 12(F)." *Herring* at ¶ 50.

{¶ 33} Finally, as the trial court concluded, our determination that the Myers failed to "appear" for purposes of Civ.R. 55(A) renders it unnecessary for us to determine whether default judgment entered without providing notice to an appearing defendant renders the judgment void or merely voidable. Also, because the Myers deny on appeal that their motion was a Civ.R. 60(B) motion, we need not determine whether they were entitled to relief under Civ.R. 60(B).

{¶ 34} We find the Myers' sole assignment of error not well-taken.

15.

### III.  Conclusion

{¶ 35} We affirm the October 6, 2014 judgment of the Fulton County Court of Common Pleas.  The costs of this appeal are assessed to the Myers pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.             _____
                                                          JUDGE

Stephen A. Yarbrough, P.J.

                                           _____

James D. Jensen, J.                                   JUDGE
CONCUR.

                                           _____

                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.